UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOSE PERALTA,

                Plaintiff,　　　　01 Civ. 3171 (BSJ)

      v.　　　　　　　　　　　　**Order**

SANDRA VASQUEZ, et al.,

                Defendants.
------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Jose Peralta ("Plaintiff" or "Peralta"), an inmate in the custody of New York State's Department of Correctional Services ("DOCS"), commenced this § 1983 action against Defendants Sandra Vasquez, Robert A. Jones, and Donald Selsky (collectively "Defendants"), prison officials at the Fishkill Correctional Facility. Plaintiff alleges that his constitutional rights were violated in a prison disciplinary proceeding that resulted in sanctions. Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND[1]

    On May 16, 1998, inmate Jose Peralta was accused of conspiring to injure another inmate with a "razor-type weapon." A disciplinary hearing was scheduled to adjudicate the matter. Defendant Sandra Vasquez, a corrections counselor with DOCS, was

---

[1] Unless otherwise noted, these facts are undisputed.

1

assigned to assist Peralta at the hearing. Defendant Robert Jones, the assistant superintendent at the facility where Peralta was being detained, conducted the hearing on June 12, 1998. Jones found Peralta guilty of four disciplinary infractions and imposed a penalty of five years of confinement in the Special Housing Unit ("SHU"), and equal durations of loss of privileges and loss of good-time credits. The appellant appealed to Defendant Donald Selsky, the director of special housing/inmate disciplinary programs, who reduced all sanctions from 60 to 24 months.

## PROCEDURAL HISTORY

Having exhausted his appeals within the prison, Peralta filed an Article 78 petition challenging the decision in New York Supreme Court, which transferred the case to the Appellate Division, Second Department. A judge of the Appellate Division granted Peralta "leave to file as a poor person" but declined to waive the filing fee. When Peralta failed to pay the fee, which he stated he could not afford, his case was dismissed. His appeal to the New York Court of Appeals of the decision dismissing his case was denied.

Peralta, proceeding pro se, then filed the instant action under 42 U.S.C. § 1983, alleging that the disciplinary hearing violated his constitutional rights. In his Amended Complaint, Peralta claimed that Defendants Vasquez, Jones, and Selsky

denied him "adequate assistance, witnesses, and a fair and impartial hearing officer" and, in doing so, deprived him of substantive and procedural due process and protection against cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Defendants moved to dismiss the Amended Complaint on the grounds that Plaintiff failed to successfully challenge the loss of good time through available state and federal proceedings as required by Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997). On April 27, 2004, the Court granted Defendants' motion under the Heck rule and dismissed the action.

   Plaintiff appealed this decision, and on October 17, 2006, the Second Circuit reversed, holding that Plaintiff could proceed with his action if he disavowed any claims to restore the good time lost as part of his administrative sanction. Peralta v. Vasquez, 467 F.3d 98, 106 (2d Cir. 2006). At a conference on June 27, 2008, Plaintiff affirmatively abandoned any claims for relief pertaining to the loss of good time or other issues affecting the length of his imprisonment. (Jul. 2, 2008 Order, Item 5.) On August 12, 2009, Defendants submitted a Motion for Summary Judgment, arguing that Plaintiff received due process in the disciplinary proceedings and the action should be dismissed.

**LEGAL STANDARD**

Summary judgment is appropriate when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the burden of making this showing. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). All factual disputes and inferences must be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255. Summary judgment is improper where the evidence supports a reasonable inference that the nonmoving party might prevail on the claim at issue. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). Nevertheless, a nonmoving party may not merely rest upon conclusory allegations or speculation, but must provide specific facts evidencing a genuine issue for trial. Niagara Mohawk Power Corp. v. Jones Chemical Inc., 315 F.3d 171, 175 (2d Cir. 2003). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

A defendant is entitled to summary judgment if the undisputed facts reveal an absence of sufficient proof as to any essential element of a claim. See Duse v. IBM, 252 F.3d 151, 158 (2d Cir. 2001). Defendant's motion "must prevail if the plaintiff fails to come forward with enough evidence to create a

genuine factual issue to be tried with respect to an essential element to [his] case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

## DISCUSSION

A. General Principles of Prison Disciplinary Due Process

To prevail on a prisoner disciplinary due process claim, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law. See Bedoya v. Cunningham, 91 F.3d 349, 351-52 (2d Cir. 1996). There is no dispute that the defendants in this case acted under color of state law. What remains is a two-pronged inquiry: (1) whether the plaintiff had a protected liberty interest in not being confined; and, if so, (2) whether he was deprived of his liberty interest without due process. Id. In their summary judgment motion, Defendants seek summary judgment on whether Plaintiff Peralta received due process.

Due process in a prison disciplinary proceeding consists of: (1) 24 hours written notice of the disciplinary charges; (2) permission to call witnesses and present evidence when doing so would not be unduly hazardous to institutional safety or correctional goals; (3) hearing before a fair and impartial hearing officer; (4) support by some evidence of any conviction; and (5) written statement of fact findings that support the

5

disposition as well as the reasons for the disciplinary action taken. Espinal v. Goord, 180 F.Supp.2d 532, 538 (S.D.N.Y. 2002) (citing Wolff v. McDonnell, 418 U.S. 539, 563-69 (1974)). However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556.

B. Plaintiff's Allegations Against Defendant Vasquez

Defendant Sandra Vasquez, a corrections counselor with DOCS, was assigned to assist the Plaintiff at his disciplinary hearing. Plaintiff alleges in his Amended Complaint that Defendant Vasquez provided inadequate assistance in violation of his due process rights when Vasquez allegedly did not interview the victim, witnesses, or staff that Peralta requested, did not obtain internal prison movement records which purportedly could have proven Peralta's innocence, and did not provide Peralta with a current prison rule book. (Am. Compl. at ¶¶ 5-8.)

While there is no right to counsel, prison officials have a constitutional obligation to provide assistance to an inmate "in marshaling evidence and presenting a defense when he is faced with disciplinary charges." Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988). An inmate assistant's duties are prescribed by state regulation:

6

> The assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses and to report the results of his efforts to the inmate. He may assist the inmate in obtaining documentary evidence or written statements which may be necessary. The assistant may be required by the hearing officer to be present at the disciplinary or superintendent's hearing.

7 NYCRR § 251-4.2.

Although an inmate has a certain right to assistance in gathering evidence to present his defense, this right is "limited, however, due to 'institutional concerns that in general bar an inmate from obtaining counsel.'" Pilgrim v. Luther, 2007 U.S. Dist. LEXIS 7410, *11-*12 (S.D.N.Y. Jan. 24, 2007) (quoting Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993)). For instance, "[t]he assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled." Pilgrim, 2007 U.S. Dist. LEXIS 7410, *12 (quoting Silva, 992 F.2d at 22). An inmate is not entitled to have the assistant act as a "private investigator." See Shepard v. Coughlin, 1993 U.S. Dist. LEXIS 3170, *13 (S.D.N.Y. Mar. 16, 1993); see also Jackson v. Johnson, 30 F.Supp.2d 613, 619 (S.D.N.Y. 1998)(citation omitted)("An assistant's role is to act as 'merely a surrogate for the inmate, not a legal adviser or advocate.'").

7

Inmate assistants fill out a form at the conclusion of their assistance (the "Assistant Form"). In this case, the Assistant Form indicates that Peralta made only two requests for information: (1) that Defendant Vasquez interview the victim, inmate Valcarcel, and (2) that Vasquez ensure that Sergeant M. Capra be called as a witness at the hearing. (Schulman Decl., Ex. D at 5.) At the bottom of the Assistant Form is the following in all-capitals, bold type: "TO BE COMPLETED AT CONCLUSION OF ASSISTANCE." Beneath that, the Assistant Form reads: "I have interviewed witnesses and assisted as requested and reported the results to the inmate charged." (Id.) The form is then signed by Defendant Vasquez and the Plaintiff, dated 6/2/98.

The Assistant Form signed by Plaintiff does not list the other requests for information that Plaintiff now claims he made to Vasquez. In fact, other than Plaintiff's own affidavit, there is no indication that Plaintiff requested Vasquez to obtain this information. Plaintiff admitted both at the hearing and at deposition that he signed the form acknowledging that Counselor Vasquez had done what Plaintiff had requested. (Schulman Decl., Ex. F at 39; Peralta Depo. at 58.) Because a hearing assistant does not function as an attorney or paralegal, due process does not require a hearing assistant to go beyond the scope of the inmate's requests. Pilgrim, 2007 U.S. Dist. LEXIS 7410, *12.

Thus, due to the Assistant Form signed by Plaintiff, as well as his own hearing and deposition testimony, the Court finds no merit in Plaintiff's due process argument with regard to his alleged requests to have Vasquez interview other staff members, obtain logbooks, and acquire a copy of the inmate rulebook.

Plaintiff also claims that Vasquez violated his due process rights by failing to interview inmate Valcarcel, but the Court disagrees. Vasquez reported to Plaintiff that Valcarcel had been transferred to another facility after the incident and was unavailable to her. (Id.) At the hearing, Plaintiff was provided with Valcarcel's written statement that clearly showed he was not willing to testify. Valcarcel's refusal to testify was confirmed at the hearing by a corrections officer from Valcarcel's new facility. (Def. R. 56.1 St. ¶¶ 38-39.) Vasquez's role as hearing assistant did not include compelling Valcarcel's cooperation. In sum, the Court finds that Defendant Vasquez's performance as hearing assistant did not violate Plaintiff's due process rights.[2]

C. Plaintiff's Allegations Against Defendant Jones

Defendant Jones was the officer who conducted Plaintiff's prison disciplinary hearing where Plaintiff was found guilty of

---

[2] Defendant Vasquez has never been served. Federal Rule of Civil Procedure 4(m) provides for dismissal of complaints against unserved parties if, absent good cause, they are not served within 120 days. Here, this date passed more than six years ago. In addition to this Court's decision that her assistance did not violate Plaintiff's due process rights, Plaintiff's failure to serve Defendant Vasquez is reason for the dismissal of this action as to Vasquez.

9

all charges. Plaintiff alleges that Jones "was bias[ed], unfair, and partial throughout the hearing;" found guilt based on hearsay; credited the informants without examining them in person; took confidential, in camera testimony; and did not provide Plaintiff with access to Valcarcel. (Am. Compl. ¶ 10.)

Due process does not require that prison disciplinary hearings be conducted by hearing officers with the same impartiality as judges. "Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process." Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989). "Administrators serving as adjudicators are presumed to be unbiased." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996).

An inmate in a disciplinary hearing does not enjoy the same right to call and confront witnesses as would a defendant in a criminal trial. See United States v. Abuhamra, 389 F.3d 309, 326 (2d Cir. 2004). A hearing officer has substantial discretion to receive evidence ex parte, outside of the presence of the inmate. Wolff v. McDonnell, 418 U.S. 539, 565-67 (1974). A hearing officer may also preclude an inmate from calling a witness if doing so would impinge on legitimate correctional

goals or if there is a lack of necessity for calling the witness. Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992).

Plaintiff's allegations largely center around Sergeant Capra's testimony to Defendant Jones during the hearing which was given in a confidential session outside Plaintiff's presence. Capra testified that two inmate informants identified Plaintiff as the leader of a Dominican gang who participated in the decision to assault Valcarcel. The actual assault was done by inmate Torres, and Capra received two anonymous notes, apparently authored by different persons, both naming Plaintiff as one of the participants in the decision to assault Valcarcel. Capra also discussed the observations of corrections officers of the incident in the yard, but Jones determined that their observations were properly heard in open session. Plaintiff was then able to ask Capra questions through Jones.

Here, the grounds for denying Plaintiff the opportunity to hear the evidence from the confidential informants were obvious. Revealing the identity of the informants would jeopardize the safety of the informants and, in turn, jeopardize institutional security. Plaintiff was also provided with the requisite brief explanation of the reasons for refusing to disclose the confidential evidence. See Wolff, 418 U.S. at 566 (stating that a hearing officer may refuse to call witnesses when doing so "may create a risk of reprisal or undermine authority"); Dixon

11

v. Goord, 224 F.Supp.2d 739, 746 (S.D.N.Y. 2002)(stating that the inmate is entitled to a brief explanation of the reasons for the refusal). Plaintiff was advised that there were "several sources of confidential informants" and that the incident was gang-related. (Schulman Decl., Ex. F at 52-53.)

Defendant Jones received the confidential informant testimony through Sergeant Capra since the informants were not willing to testify at the hearing. (Id., Ex. E at 22; Ex. F. at 83.) Plaintiff contends that Jones could not adequately assess the credibility of the informants without hearing their information in person. A hearing officer may base a determination of guilt on a hearsay account of confidential informants' statements so long as he makes some independent assessment of the informants' credibility. See Gaston v. Coughlin, 249 F.3d 156, 163-64 (2d Cir. 2001). Here, Jones expressly found that the informant evidence was credible. (Schulman Decl., Ex. F at 89.) A review of the transcript shows that determination was not a rubber stamp of Capra's presentation. Jones asked Capra to explain why he believed the informant evidence was credible and what he knew about the informants' motivations. (Conf. Tr. at 3, 4-5.) Jones specifically considered the possibility of a self-interested motive. (Id. at 9.) Jones also explored whether the informants would be willing to testify. (Id. at 6, 11.) Finally, Jones did

12

not take Sergeant Capra's credibility for granted, allowing Plaintiff an opportunity to fully explain his contention that the sergeant was retaliating against him for filing a grievance. (Schulman Decl., Ex. F at 54-56.) Jones made an independent assessment of the informants' credibility.

Plaintiff's contention that Jones should have made Valcarcel available to testify is also meritless. Valcarcel's refusal to cooperate in Plaintiff's defense is clear both from Valcarcel's written statement, (Id., Ex. D at 4), and the corrections officer's testimony confirming the same.

The United States Supreme Court has held that the relevant question regarding sufficiency of the evidence in a prison disciplinary hearing is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985)(emphasis added). The Second Circuit has ruled that such a minimal standard "may be met even where the only evidence was supplied by a confidential informant, 'as long as there has been some examination of indicia relevant to [the informant's] credibility.'" Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001)(citation omitted).

In this case, two confidential informants identified Plaintiff as being involved in the altercation in the yard and one of those identified him as participating in the decision to

assault Valcarcel in a housing unit. A review of the confidential transcript reveals that there was no reason to believe that the informants coordinated their stories. The informants, in turn, were substantially corroborated by three corrections officers observing Plaintiff's presence in the yard at the time of the altercation and apparently in a role at the center of gang activity. Conversely, Jones expressly discredited Plaintiff's testimony that he was not in the yard during the initial altercation. (Schulman Decl., Ex. F at 89.) This Court finds that there was sufficient evidence to support the conclusion reached by the disciplinary board, and Peralta received due process from Defendant Jones at the hearing.[3]

D. Plaintiff's Allegations Against Defendant Selsky

Plaintiff alleges that he was deprived of his due process rights by Defendant Donald Selsky, the director of special housing/inmate disciplinary programs, who heard Plaintiff's appeal. In his Amended Complaint, Plaintiff's main argument against Selsky is essentially that he affirmed the disciplinary conviction.

---

[3] Plaintiff also claims that Jones acknowledged the inadequacies of Defendant Vasquez's assistance and did nothing to correct it. But the hearing transcript, the accuracy of which Plaintiff does not challenge (Peralta Dep. at 36), reveals no such acknowledgement. Plaintiff never raised any issues he had about Vasquez's performance at the hearing and did not state that he failed to receive any requested documents or the interviewing of additional witnesses.

It is well established that administrative reviewers of prison disciplinary proceedings are entitled to broad discretion so long as some evidence supports the finding of guilt. See Afrika v. Selsky, 750 F.Supp. 595, 600 (S.D.N.Y. 1990). As discussed above, there is evidence supporting guilt here.

Regarding the particular issues raised in Plaintiff's administrative appeal, Plaintiff's initial appeal appears to have been limited to Vasquez's performance and Jones' fairness. (Schulman Decl., Ex. E at 27-31.), both of which have been addressed above. Plaintiff did not raise any issues regarding the receipt of confidential information.

By letter dated May 9, 2001, nearly three years after the hearing, Plaintiff moved to reconsider on the grounds that he did not have a current inmate rule book at the time of the hearing. (Id., Ex. E at 32-33.) Although Plaintiff acknowledged that he received an inmate rule book in April 1998, he claimed that it was not the February 1998 edition, containing a new rule that an inmate may be found guilty on a conspiracy theory. (Id. at 33.) Plaintiff alleged that he had evidence showing that he received an outdated rulebook in April 1998, but the evidence merely indicated that the receipt forms Plaintiff signed in April 1998 did not specifically identify which edition he received. (Id. at 35.) Accordingly, it was reasonable for Selsky to conclude that Plaintiff had received the then most current

15

edition of the rulebook in April 1998. Further, Plaintiff never informed Jones that he did not understand the charges.

New York law is well established that an inmate seeking to reverse a disciplinary determination based on lack of an inmate rulebook must raise the issue in a timely manner at his administrative hearing. Johnson v. Coughlin, 205 S.D.2d 537, 538 (2d Dept. 1994). Here, not only did Plaintiff fail to bring the issue to any Defendant's attention until nearly three years after the June 1998 disciplinary hearing, the issue was not raised until nearly a year after he had completed his SHU confinement in May 2000. Indeed, Plaintiff had already commenced this federal litigation when he raised the issue in the motion to reconsider. Such an argument is not timely.

E. Other Due Process Claims

Throughout his papers, Plaintiff asserts other various arguments related to his due process claims.[4] The Court finds these arguments without merit as follows.

Plaintiff makes several claims of his innocence of the hearing charges. He claims that he was falsely accused by Sergeant Capra in retaliation for lodging a complaint against the sergeant. He claims that he was not in the prison yard where the attack took place, did not conspire to assault Valcarcel,

---

[4] Plaintiff did not raise these arguments in his Complaint but articulated them in his Opposition Motion.

16

and is not a member of a gang. In a disciplinary due process claim, the question is not whether an inmate was innocent or guilty of the charges, but whether he was afforded the limited rights necessary to satisfy that right to due process. See Freeman v. Rideout, 808 F.2d 949, 951-53 (2d Cir. 1986)(noting that charges may have been unfounded does not show a due process violation). These innocence claims are irrelevant to the subject of this lawsuit.

Plaintiff also argues that he did not have sufficient notice of the facts underlying the misbehavior report and thus could not marshal an adequate defense. Plaintiff claims that the misbehavior report was defective because it did not identify the gang he was associated with and all of the alleged co-conspirators, or describe their roles in the conspiracy. Plaintiff's suggestion that the misbehavior report name the gang is unreasonable because it would allow inmates to avoid discipline for gang activities merely by keeping their gang name secret, thereby endangering the safety of inmates and staff. Further, the report clearly alleges that Plaintiff conspired with Torres, the actual assailant, and is thus not defective for failing to identify the co-conspirators. See Schulman Dec. Ex. D at 1-2.

Plaintiff claims that the misbehavior report also contained discrepancies between the titles of the offenses it charged and

Jones' eventual convictions. This included being charged with violating Rule 105.12, a currently non-existent rule, rather than 105.13 (unauthorized group/gang activity). Plaintiff's arguments are based on amendments to the disciplinary rules which repealed Rule 105.12 and created 105.13. These rules, cited by Plaintiff, were effective in May 2008, a decade after the attack on Valcarcel on May 30, 1998. As for inconsistent titles of offenses, the Court finds such distinctions immaterial in light of Plaintiff's convictions for violent conduct (Rule 104.11) and unauthorized group/gang activity (then Rule 105.12, both of which were sufficient to sustain the sanction imposed on Plaintiff. Plaintiff was also charged with conspiracy to assault, but was found guilty of assault (Rule 100.10). However, Plaintiff acknowledged in his letter of May 9, 2001 to Director Selsky that the disciplinary rulebook issued in February 1998, three months prior to the assault, contained a new rule permitting an inmate to be found guilty under a conspiracy theory, whether or not the substantive rule charged expressly mentioned conspiracy. See Schulman Dec. Ex. E at 33. Thus, as of at least that February 1998 date, DOCS recognized no material difference between a charge of assault and a charge of conspiracy to assault. Plaintiff also concedes that assault and conspiracy to assault both violated Rule 100.10. (Pl. Stmt. ¶ 14.)

18

Plaintiff also argues that his due process rights were deprived because of his inability to speak English. Plaintiff claims that the misbehavior report was not intelligibly translated into Plaintiff's native Spanish language, and that Vasquez did not possess sufficient command of Plaintiff's Dominican Spanish dialect to clearly and adequately communicate with Plaintiff. At the outset of the disciplinary proceedings, Plaintiff was given a choice of two Spanish language hearing assistants, including Vasquez, and expressed the view that either would be acceptable to him. See Schulman Dec. Ex. E at 23; Ex. F at 40-42. Moreover, Vasquez was not the translator at the disciplinary hearing. The misbehavior report was read at the disciplinary hearing and translated into Spanish and Plaintiff did not complain that the hearing translation was different from Vasquez's handwritten translation. At the hearing, Plaintiff did not complain that he did not understand either the translation at the hearing or that of Vasquez, and Plaintiff's appeal to Defendant Selsky did not raise an issue of difficulty in Vasquez's translations. Id. Ex. D at 9-13.[5]

---

[5] Plaintiff has made recent requests for pro bono counsel, stating that he cannot speak English and cannot make adequate legal arguments. (See, e.g., Jan. 4, 2010 Peralta Letter.) On July 22, 2008, a magistrate judge denied this same request without prejudice, stating that Plaintiff could renew his request if he addressed his Eighth Amendment claims more specifically so that the magistrate could make a more informed analysis of the merits of his request. Plaintiff has not provided such information in these subsequent requests and this Court agrees with the magistrate judge's decision to deny pro bono counsel.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED because Plaintiff received due process in the disciplinary proceedings. The Clerk of the Court is directed to close this case.

**SO ORDERED:**

                                                               _____
                                                               BARBARA S. JONES
                                                               UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
              February 3, 2010